BENSON et al., Appellants, v. COOK, Respondent.

(201 N. W. 526.)

(File No. 5194.  Opinion filed December 18, 1924.)

1. **Waters and Water Courses—Irrigation—Rights of Locator of Water of Coulee Held Subordinate to Prior Locator.**

Where, prior to Dry Law of 1907 (Laws 1907, c. 180), both parties had made some use of water that ran down coulee for

irrigation purposes, and later defendant located such waters under Rev. Code 1919, Secs. 8220 to 8259, plaintiff's rights under attempt to locate waters a month later were subordinate to defendant's rights.

2. Waters and Water Courses—Irrigation—Words and Phrases—Water Flowing Down Coulee Held Not to Constitute "Definite Stream" Within Statute.

Water flowing down a coulee held not to constitute a "definite stream," within Rev. Code 1919, Sec. 348, prohibiting owner from preventing flow, and hence subject to impounding under Dry Law (Rev. Code 1919, Secs. 8220-8259), where it had no permanent source of supply, and water from springs occurring at intervals along coulee seeped into ground after running a short distance.

3. Waters and Water Courses—Definitions—"Definite Stream" and "Water Course" Defined.

A "definite stream," term within Rev. Code 1919, Sec. 348, implies presence or existence of running water with some permanent source of supply running along a fixed channel, while a "water course" is a depression worn by running water, and having bed and banks forming continuous channel, and retains its character whether full of water or dry.

4. Waters and Water Courses—Surface Waters—Real Property—Owner of Land Has Absolute Right to Surface Water.

Owner of land has absolute right to surface water found thereon, and he may retain it for his own use and prevent it from flowing on land of another.

5. Waters and Water Courses—Dams—Irrigation—Lower Landowners on Coulee Not Entitled to Require Removal of Dam Erected by Upper Landowner, in Absence of Strong Case.

Where lower landowners on coulee made no protest or in any manner attempted to prevent upper owner from constructing dam in 1913 and obstructing flow of water until after dam had been rebuilt in 1917, and about $15,000 expended thereon, a strong case is necessary to entitle lower owner to compel removal of such dam.

Appeal from Circuit Curt, Hardlng County; Hon. Raymond L. Dillman, Judge.

Action by James F. Benson and another against Floyd Cook. Judgment for defendant, and plaintiffs appeal Affirmed.

L. M. Simons, of Bellefourche, and Norman T. Mason, of Los Angeles, Cal., for Appellant.

Dan McCutcheon, of Bellefourche, and Hayes & Heffron, of Deadwood, for Respondent.

Appellant cited: 40 Cyc 553, 555; Lindblom v. Bound Valley, (Cal.) 173 Pac. 994; Long Irrigation page 78, Sec. 38; 1 Wiel Water Rights, secs. 333, 754; Town of Jefferson v. Hicks, 23 Okl. 684, 102 Pac. 79; Rev. Civ. Code 1919, sec. 348; 3 Farnham Waters, sec. 664; 2 Kinney Irr., sec. 730; Haight v. Costanich, 184 Cal. 426, 194 Pac. 26.

Respondent cited: Walker v. New Mexico & S. P. R. Co., 41 L. ed. 837; Cal. San Pedro Co. v. Brick Co., 187 Cal. 62; Cal. Fifield v. Water Co., 62 Pac. 1054; Los Angeles Cemetery Ass'n. v. Los Angeles, (Cal.) 37 Pac. 376; Idaho Hutchinson v. Watson Slough D. Co., 101 Pac. 1060; Geddis v. Parrish, 21 Pac. 314; Reit v. Furrow, 85 Pac. 936; Sierra County v. Nevada County, 99 Pac. 371; Tex. Civil App. Hoefs v. Short, 190 S. W. 802; City of Paola v. Garman, 103 Pac. 83; Fromekke v. Parker, (N. D.) 171 N. W. 286; Scott v. Missouri Southern R. Co., 139 S. W. 259; Town v. Missouri Pac. Ry. Co., 70 N. W. 420; 36 Cyc 1335; S. D. Deadwood Cent. Ry. Co. v. Barker, 86 N. W. 623; Crawford Co. v. Hathaway, 93 N. W. 798; 60 L. R. A. 909; King v. Chamberlain, 118 Pac. 1099; S. D. Germain Irr. Co. v. Hawthorne Ditch Co., 143 N. W. 127.

POLLEY, J. This action grew out of a controversy over the right to use for irrigation purposes the water that flows down Ash coulee. Plaintiffs and defendant are upper and lower landowners along said coulee; plaintiffs' land being some two or three miles lower down the coulee than the land of defendant. Both parties are engaged, to some extent, in farming and stock raising. The rainfall in that vicinity is not excessive, and irrigation is necessary, or at least desirable, for successful farming.

Ash coulee, as the name implies, is a long shallow draw. It has its course in the Short Pine Hills in Harding county, and extends southeasterly to the head of the Moreau river. It contains no permanent stream of water, but it furnishes drainage for a considerable area, and usually, while the snow is melting in the spring, and after heavy rainfalls during the summer, some water runs down the coulee. The quantity of such water for any given year depends on the amount of snow that falls during the winter and the amount of rain that comes during the spring and summer. As a rule the water from melting snow runs from a few days to a few weeks; once it was known to run as long as

two months, though there are some years when there is no water at all from this source. After heavy rains the water runs from a few hours to a day or two. Some summers there is no water at all from this source; but during the 40 years Ash coulee has been known by the various witness who testified there has been but one or two years, when there was not some water from either snow or rain.

Prior to the enactment of the "Dry Draw" Law of 1907 (chapter 180, Laws of 1907), both parties to this action had made some use of the water that ran down the coulee for irrigation purposes, but neither of them appears to have acquired, or to have believed he had acquired, a right to such water as against the other until the 8th day of August, 1913. On that date defendant located the "storm and flood" waters of Ash coulee under the provisions of said "Dry Draw" Law, now sections 8220 to 8259, Rev. Code 1919, and thereafter proceeded to construct a dam across the coulee of sufficient size and height to hold enough water to irrigate several hundred acres of land, and also constructed a system of ditches and flumes to distribute the water over such land. This dam was washed out by an unusual freshet in 1915, but was rebuilt and enlarged in 1917, so that at the commencement of this action defendant had a dam 500 feet long, 32.7 feet high, 159.4 feet wide at the bottom, and 14 feet wide on top. It impounded a body of water covering an area of 80 acres, and cost him $15,000. After the dam was constructed in 1913 plaintiff was deprived of the use of the water for irrigating purposes, except during the time the dam was out of repair from 1915 to 1917.

[1] On the 9th day of September, 1913, plaintiffs made an attempt to locate the waters in Ash coulee under the Dry Law Act, but this was a month after defendant had made his location, and any rights that plaintiff may have acquired under such location were subordinate to the rights of defendant, so that so far as this location made by plaintiff is concerned nothing further need be said.

The purpose of this action is to compel defendant to remove the said dam and to permit the water coming down Ash coulee to flow unimpeded to and over plaintiff's premises. Findings and judgment were for defendant, and plaintiffs appeal.

Whether appellants are entitled to have the water coming down Ash coulee flow unimpeded to and over their land depends upon the character and nature of such flow of water. Section 348, Rev. Code 1919, so far as material, reads as follows:

"* * * The owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream. Water running in a definite stream, formed by nature, over or under the surface, may be used by him as long as it remains there; but he may not prevent the natural flow of the stream, or of the natural spring from which it commences its definite course, nor pursue nor pollute the same, except that any person, owning land through which any nonnavigable stream passes, may construct and maintain a dam across such nonnavigable stream which does not raise the water exceeding four feet; provided, that the course of the water is not changed, that vested rights are not interfered with, and that no land shall be flooded other than that belonging to the owner of such dam."

If the water that runs down Ash coulee forms a definite stream as contemplated by this statute, then defendant may not prevent the same from flowing down onto plaintiffs' land. The trial court found as a fact that such waters do not constitute a definite stream, and upon the correctness of this finding depends the final determination of the case. In appellants' brief the basis of their claim is stated as follows:

"Appellants claim a right to sufficient of the water to irrigate about 200 acres of their land, situated below respondent's by virtue of an actual appropriation and use thereof for that purpose made by them and their grantors long prior to the erection of respondent's dam, or the location of his water right, as well as by a prior draw water right location."

And again say appellants:

"The first question then is, Do the waters of Ash coulee constitute a running stream or water course?"

[2] And appellants' argument is devoted largely to an effort to show that Ash coulee is a "water course." But this is not the question at all. The question is, Does the water that runs down Ash coulee constitute a "definite stream"? As we have already seen, such water has no permanent source of supply. The evidence shows there are some springs at intervals along the coulee,

but the water from these springs does not form a stream. The water comes to the surface, runs down the draw a short distance, and then seeps into the ground. The evidence does not show that the water from any one of these springs runs on the surface of the ground until it reaches the next spring below, and none of the water from any spring runs into respondents' land or into the pond formed by his dam.

[3] It is contended by appellant that the fact that the water that runs down Ash coulee follows a definite water course changes its character from mere surface or waste water to a definite stream. This does not necessarily follow. The term "definite stream" implies the presence or existence of running water, with some permanent source of supply, running along a fixed channel. Not meaning, of course, that a stream or river may not run dry during a dry season without losing its character as a river; but it must be something more than just a wash or runoff caused by melting snow or a heavy rain.

Counsel for appellants use the terms "water course" and "running stream" as though they were synonymous terms, and many of the authorities cited by appellants use these terms interchangeably. This is a loose, inaccurate use of these terms that has led to much of the confusion and misunderstanding that exists in regard to this important subject. These terms do not have the same meaning. While there cannot be a running stream without a water course, nothing is more common than a water course without a stream. Extending throughout the length of Ash coulee, and the same is true of practically every other coulee or dry draw in the land, is a meandering depression that has been worn by the action of running water. This depression has a bed and banks forming a continuous channel down which the water runs when there is water to run. This channel constitutes a water course, and it retains its character as such whether it is running full of water or though it may have been dry for months or years at a stretch.

[4] The trial court found that the water that flows down Ash coulee does not form a definite stream, and that Ash coulee is a "dry draw" or ravine not having a flow of 20 miner's inches of water during the greater part of the year. This finding is fully supported by the evidence, and since this water does not form a

definite stream, it still retains its character as mere surface water; and it is the settled rule, and a rule from which we believe there is no dissenting voice, that the owner of land has the absolute right to the surface water found thereon, and that he may retain such water for his own use and prevent it from flowing upon the land of another. 27 R. C. L. 1139. This rule is stated in Farnham on Water Rights, p. 2572, as follows:

"There is no right on the part of a lower appropriator to have surface water flow to his land from upper property. The owner of the soil on which it falls has an absolute right to it, and may do with it as he pleases. And the fact that surface water has flowed from the land of one man onto that of another for more than twenty years will not prevent the former from draining his land, so as to cut off the flow."

The application of this rule brings the case within the provisions of section 8239, Rev. Code 1919, authorizing the occupants of agricultural land to construct dams across dry draws and water courses for the purpose of "directing flood waters for irrigation and live stock purposes," and, since appellants have no vested right in this water, a discussion of the "Dry Draw" Law is wholly unnecessary to a disposition of the case.

Our attention is especially directed to Ide v. United States, 263 U. S. 497, 44 S. Ct. 182, 68 L. ed. 407, recently decided by the Supreme Court of the United States. But we fail to find any principle announced in that case that is decisive of any queston involved in this, and under the rule announced in the opinion in that case written by Judge Caralnd of the Circuit Court of Appeals, Ide v. United States, 277 F. 377, Ash coulee is only a "dry run or wash," for it has neither permanent source of supply nor permanent flow.

[5] It is urged by respondent that appellants should be barred from maintaining this action by their laches. There is much force in this contention. The evidence shows that appellants were fully informed from the time respondent commenced the construction of his dam in 1913 of the steps that were being taken by respondents to impound and utilize the water in Ash coulee. Yet they made no protest, nor in any manner attempted to prevent respondent from constructing his dam and obstructing the flow of the water until after the dam had been re-

built in 1917, and something like $15,000 had been expended on the project by respondent. It would take a strong case indeed to require the destruction of all this work at this late day. More-over, the court found, and we believe the evidence shows, that a sufficient amount of water, if properly conserved. flows into Ash coulee below respondent's dam and above appellants' land to irrigate all of the land he wishes to irrigate.

The judgment and order appealed from are affirmed.

DILLON, J., not sitting.

Note.—Reported in 201 N. W. 526. See, Headnote (1), Ameri-can Key-Numbered Digest, Waters and water courses, Key-No. 140, 30 Cyc. 722; (2) and (3) Waters and water courses, Key-No. 130, 40 Cyc. 704; (4) Waters and water courses, Key-No. 117, 40 Cyc. 640; (5) Waters and water courses, Key-No. 117, 40 Cyc. 674.