TERRY, et al, Appellants, v. HEPPNER, et al, Respondents.

(239 N. W. 759.)

(File No. 6629.   Opinion filed December 19, 1931.)

*Martin & Martin,* of Hot Springs, for Appellants.

*Eastman & Eastman,* of Hot Springs, for Respondents.

CAMPBELL, J.   Plaintiffs Terry and defendants Heppner are owners of land upon Plum creek; respondents being the upper proprietors and appellants the lower.   The real estate title of all

parties originated in homestead and desert land entries in the years 1901 and 1903; the title of appellants being the earlier in its inception. Defendants in 1912 and 1913 constructed upon their upper estate certain dams and reservoirs, as a result of which the waters flowing in Plum creek were impounded and no longer came down to the plaintiffs. Plaintiffs instituted this action to recover certain damages to their crop because of failure to receive water and to enjoin respondents from continuing to prevent the flow of the waters of Plum creek to their premises. An order of the trial court sustaining a demurrer to plaintiffs' complaint was reversed on appeal. Terry v. Heppner, 48 S. D. 10, 201 N. W. 705. The case, being thereafter tried, resulted in judgment below in favor of the defendants, denying the relief sought by plaintiffs, from which judgment and from the refusal of a new trial plaintiffs have now appealed.

Appellants base their claim to have the waters of Plum creek come to their premises without interference by respondents upon two certificates of water right location, one prior (May, 1906), and one subsequent (October, 1907) to the effective date of chapter 180, Laws 1907, frequently referred to as "The Dry Draw Law," by virtue of which water right locations appellants claim the right to take from Plum Creek for irrigation purposes 1,600 miners' inches of water, and to have the same reach them without interference by upper proprietors.

Admittedly, the source of the waters of Plum creek is mere surface water arising from the natural drainage of melting snow, rain, etc., over a considerable area. If such waters, after finding their way into the natural drainway or channel known as Plum Creek, continue to retain their original character as mere surface waters until they reach the premises of respondents, the upper proprietors, it is very clear that appellants have failed to establish any right to have the same flow without interference to their premises. No riparian rights attach to surface waters, nor does the arid region theory of appropriation apply thereto. There is no right on the part of a lower proprietor to have surface water flow to his land from upper property. A landowner is entitled to use surface water as he pleases so long (and so long only) as it continues in fact to come upon his premises. He may drain or divert the same or he may capture, impound, and use it in such fashion

as he will, provided only that he does not thereby create a nuisance or unlawfully dam back or cast the waters upon the land of another. It is plain beyond question that appellants could not, prior to the Dry Draw Law, by the attempted location of a water right, establish any valid claim to have surface water flow unimpeded to their premises. If it be argued that the Dry Draw Law by its terms enabled appellants by the subsequent water right location in 1907 to establish a valid claim to surface waters, then the answer must be that to that extent the Dry Draw Law would be unconstitutional. Cf. St. Germain Irr. Ditch Co. v. Hawthorne Ditch Co., 32 S. D. 260, 143 N. W. 124. The right of the upper proprietors to deal with surface water coming upon their premises as they saw fit (as hereinbefore indicated) was a vested property right appurtenant to and inseparable from their ownership of their land, of which vested right they could not constitutionally be deprived by the Dry Draw Law. Therefore, if the waters of Plum creek come upon the land of respondents Heppner as mere surface water (as contra distinguished from a definite stream or water course), it necessarily follows that appellants have failed to make out their case.

At what time water, originating as surface water, by reaching and flowing in a definite channel or natural drainway, ceases to become mere surface water, and takes on the characteristics of a definite stream, is a nice question upon which the authorities are not in harmony. It was decided by this court in Benson v. Cook (1924) 47 S. D. 611, 201 N. W. 526, that the water flowing in Ash coulee, the natural channel or drainway involved in that case never became a stream, but at all times retained their character as mere surface water. The facts concerning the nature of the channuel, its bed and banks, the source of the water, and the nature and periods of the flow in Ash coulee, seem to us entirely parallel with the facts appearing in this record concerning Plum creek. If water originating from melting snow and rains running down Ash coulee retained its characteristics as mere surface water, and did not become, within the meaning of the law, a definite stream, then we can see no escape, upon the record facts in the two cases, from applying the same rule to the water running down Plum creek (at least up to the point where it reaches the premises of the parties to this action). The question is admittedly a

close one. However, by virtue of Benson v. Cook, it has been established as the law of this state for some seven years that water originating as surface water and finding its way to and flowing down a natural channel or drainway with bed and banks as it did in Ash coulee (and as it does in Plum creek), flowing only for comparatively brief periods of time after the melting of snow or falling of rain, retains its character as mere surface water. We do not believe it would be salutary or advisable to attempt at the present time to establish a different rule. We therefore adhere to the view that the waters of Plum creek were and are mere surface waters, and it follows that appellants never established any legal right, as against respondents, the upper proprietors, to have the same flow to their premises. Consequently appellants are not entitled to the relief they sought in this action, and the judgment of the trial court refusing to grant relief must be, and it is, affirmed.

POLLEY, P. J., and ROBERTS, WARREN, and RUDOLPH, JJ., concur.