STURR, Appellant, *v.* BECK, Respondent.

**1. Waters and Water-Courses—Public Lands — Water Rights — Priority.**

> The right of a homestead settler to the use of the water flowing over land, is superior to that of one entering upon the land under the United States statutes and customs of miners in the locality, and locating a water right subsequent to the settler's occupancy, but prior to his final proof.
>
> FRANCIS and CARLAND, JJ., dissenting.

**2. Same — Injunction — Estoppel.**

> In such case where S., the water-right claimant, sought to restrain B. from diverting the water, it appeared that he, S., in 1880, without a grant, went upon land on which B.'s grantor had settled in 1877, and located a water right according to the recognized custom of the locality where the land was situated, constructed his ditch and had the uninterrupted use of the water for the purpose of irrigation till B. diverted it in 1886; that B.'s grantor in 1879 applied to enter the land as a homestead, made his final proof in 1883, received his patent the same year and conveyed the land to B., with covenants of warranty in 1884. It also appeared that B.'s grantor in 1882 entered into an agreement with S., in reference to the construction of another ditch in which, by way of recital, it was stated S. owned this water right; this agreement was recorded at the time. The patent to B.'s grantor contained the usual condition of being "subject to any vested and accrued water rights." *Held,* that B.'s grantor was the prior appropriator of the water right, and S. had no right of action.
>
> FRANCIS and CARLAND, JJ., dissenting.

(Argued and determined at the May Term, 1888.)

APPEAL from the district court, Lawrence county; Hon. Chas. M. Thomas, Judge.

This was an action by Daniel Sturr, plaintiff, against Charles W. Beck, defendant, to restrain him from interfering with a water ditch on his (defendant's) land, used by plaintiff to carry water to his land, and for damages sustained by reason of interference with the ditch and water. The defendant had findings and judgment in his favor, and the plaintiff appealed.

The case was tried on an agreed state of facts which (omitting particular descriptions of property and formal parts of instruments) were as follows:

1. That in June, 1877, the plaintiff settled upon one hundred and sixty acres of land in what is known as Falsebottom, Lawrence county, Dakota, through which Falsebottom creek flowed, and on the 15th of May, 1880, at the proper land office, filed his application to homestead said land; that he proved up, on March 10, 1883, and a United States patent issued to him for the land December 20, 1883; that he resided continuously on the land and cultivated a part thereof since his settlement in 1877.

2. That in March, 1877, one John Smith, the immediate grantor of the defendant Beck, settled upon one hundred and sixty acres of land immediately above the plaintiff's claim and through which the creek flowed; that on the 25th of March, 1879, said Smith filed his application to homestead said land; that on March 10, 1883, he proved up, and a patent was issued to him December 10, 1883; that Smith resided continuously upon the land from his settlement in 1877, until he sold the same to Beck, in May, 1884.

3. That said Smith sold by warranty deed, purporting to convey the fee to said Beck, and delivered to him the patent; that the defendant took possession of the premises and has lived there ever since, cultivating a good part of the same.

4. That on the 15th day of May, 1880, without a grant from said John Smith, the plaintiff located a water right on Smith's homestead claim, lot 2, on Falsebottom creek, posted a written notice there, claiming the right to divert five hundred inches of the water of said creek, miners' measurement, calling the same therein the "Elm Tree" water right, and caused a copy of the same to be filed as a certificate in the office of the register of

deeds of Lawrence county, D. T., May 9, 1881, which was duly recorded in said office, in book 14, p. 468, and is in the words and figures following :

"Know all men by these presents : That I, the undersigned, citizen of the United States and resident of the county of Lawrence and Territory of Dakota, claim, by right of location and appropriation, for mining, milling, agricultural, domestic or any other useful or beneficial purpose, to which the same can be applied, the following described water right, to-wit :

"Five hundred inches, miners' measurement, of the waters of Falsebottom creek, at a point on lot No. 2, section 2, township 6, range 3.

"I claim the right to divert and convey the said water by ditch, by pipe or flume, to any point where it can be conveniently used for any of the aforesaid purposes. This shall be known as the 'Elm Tree water right.' Located May 15, 1880, and ditch constructed and water turned into the same. Date of certificate, May 9, 1881. Daniel Sturr."

5. That, after locating said water right, plaintiff proceeded with due diligence and constructed a water ditch from the point of location across said lot 2, of Smith's homestead, in a northerly direction to and upon his own homestead claim, at a cost of about $500 and appropriated and used the waters of said Falsebottom creek through the same for the purposes of irrigation, to the extent of at least three hundred inches, miners' measurement, on his own claim, (and that such was beneficial and profitable) each year thereafter, on his growing crops, until the summer of 1886, when the defendant, Beck, obstructed said ditch at a point on said lot 2, stopped the water, and flowed the same over his own fields and irrigated his own crops therewith.

6. That, in the spring of 1886, the defendant, Beck, notified the plaintiff to cease diverting the water of said creek from its usual channel, and forbade him from maintaining his ditch on defendant's land.

7. That neither John Smith nor the defendant, Beck, made any use of the water of Falsebottom creek upon the homestead of the former prior to the patenting of the same, or since, by means of any diversion or appropriation of the same from its usual chan-

nel, in any ditch or canal, except the use made by Beck from the ditch of plaintiff in 1886–7, as herein stated.

8. That the local customs now existing and which have existed since the early settlement of the country in the locality where the respective homesteads are situated, recognize and acknowledge the right to locate water rights and to appropriate and to use the waters of flowing streams for the purpose of irrigating crops, by means of ditches and canals.

9. That in ordinary seasons and in the locality named, irrigation is necessary for the crops planted and sowed, and without it they are usually failures. That there are in that locality the following named ditches, besides the plaintiff's : [Five are named], all used for the purpose of irrigation.

10. That on the 1st day of February, 1882, the said plaintiff and the said John Smith located a water right higher up False-bottom creek and called the same, " Willow Grove water right ; " and on the 2d day of February, 1883, said plaintiff and said John Smith entered into a written contract in relation thereto, which contract was in the words and figures following, to-wit :

" This agreement made and entered into this, second day of February, A. D. 1882, between John Smith of Lawrence county, D. T., of the first part, and Daniel Sturr of the same county party of the second part. Witnesseth : That whereas, the parties hereto did on the 1st day of February, A. D. 1882, locate a certain water ditch on Falsebottom creek, in said county and territory, at a point on the ranch of John Deitschi, in said county and filed the same in the office of the register of deeds of said county for record this 2nd day of February, 1882, to which reference is hereby made for more perfect description of the said water right : and whereas, the parties hereto are desirous and intend to build a ditch to carry all the water claimed by said right, viz.: 500 inches, more or less, for irrigating the ranches of the respective parties : Now in consideration of the premises, the parties hereto promise and agree, one with the other, that each will pay half of all the costs and expense in running and making said ditch from said point of commencement to the ranch of John Smith ; emptying the water at the head of and into the

ditch known as and called the 'Elm Tree' water right, owned by Daniel Sturr in said county and territory.

"It is further agreed by and between the parties, that each party shall have the exclusive right to use all the water which may flow through said ditch every other day during all seasons of the year. If either party fails to pay half the cost of making said ditch by the first day of June, 1882, he shall forfeit all right and title to the use of said water until the said delinquent shall pay his full share. It is further mutually agreed by and between the parties that the expenses of keeping said ditch in repair shall be borne equally by the parties. John Smith, Daniel Sturr."

This instrument was witnessed, acknowledged and recorded in the office of the register of deeds Lawrence county, D. T., February 2, 1882.

11. That upon attempting to open up and use said ditch the said John Deitschi applied for and obtained an injunction restraining said locators from using the said ditch or in any way trespassing upon his property in connection therewith, and said injunction is still in force.

12. Smith's patent was in the ordinary form containing the condition: "Subject to any vested and accrued water rights, for mining, agricultural, manufacturing or other purposes, and rights to ditches and reservoirs used in connection with said water rights, as may be recognized and acknowledged by the local laws, customs and decisions of the courts."

*McLaughlin & Steele,* for appellant.

The appellant claims that under the local customs, laws and decision of the courts in the section where the water right in dispute is situated, the first appropriator of a stream running through the public lands, has the prior right to the use of the same for mining, milling, agricultural and other purposes to the extent of his original appropriation. There is no dispute as to the respondent's rights at common law. His rights here, however, are to be determined under sections 2339 and 2340, R. S. U. S. In this territory there is no common law on the subject of riparian rights. § 6, C. C.

A homestead claimant is not an owner within the meaning of

section 255, C.C.   He is a mere occupant and has no title.   U. S. v. Cook, 19 Wall. 591; U. S. v. Freyberg, 32 Fed. Rep. 195; U. S. v. Murphy, id. 376; U. S. v. Storrs, 14 id. 824; U. S. v. Lane, 19 id. 910; F. & P. M. R. R. Co. v. Gordon, 41 Miss. 420; People v. Shearer, 30 Cal. 648; Hilton v. Frisbie, 37 id. 491; W. P. R. R. Co. v. Tevis, 41 id. 494; Lowe v. Hutchins, id. 634; Deffebach v. Hawks, 115 U. S. 405.   See, also, Smelting Co. v. Kemp, 104 id. 640; Steel v. Smelting Co., 106 id. 450.   Smith, therefore, had no vested interest until March, 1883.   The claim was public land and could be charged with the servitude of this prior appropriator of the water under the act of congress.

These propositions are well established :

1. The United States is the absolute owner of the public lands.

2. Homestead claims do not limit the riparian rights of the government preceding final proof.

3. Until after final proof and the performance of all required acts, the homesteader has no vested interest in the land and cannot be the riparian owner.

4. Rights to use running water on the public lands in the Pacific states and territories have been, and may be acquired by prior appropriation, and such rights vest in the first appropriator as soon as he is in condition to use the water.   Eddy v. Simpson, 3 Cal. 249 ; Bear River Co. v. N. Y. M. Co., 8 id. 332; McDonald v. Askew, 29 id. 206; Broder v. Natoma W. & M. Co., 50 id. 621; Osgood v. Eldorado W. & M. Co., 50 id. 571; Farley v. Spring V. M. & I. Co., 58 id. 142; Himes v. Johnson, 61 id. 260; Lobdell v. Simson, 2 Nev. 783; Barnes v. Sabrow, 10 id. 217; Col. M. Co. v. Holter, 1 Mon. 296; Thorpe v. Freed, id. 651; Dodge v. Marden, 7 Or. 456; Crane v. Winsor, 2 Utah, 248; Lehi I. Co. v. Moyles (Utah), 9 Pac. Rep. 867; Yunkers v. Nichols, 1 Colo. 552; Larimer County R. Co. v. People, 8 id. 715; Atchison v. Peterson, 20 Wall 507; Tennison v. Kirk, 98 U. S. 458; Broder v. Natoma W. Co., 101 id. 276.   The rules of these cases apply to this part of the territory.   See, also, Laws 1881, chap. 142.

The doctrine of relation has no application here.   Pacific C. M. Co. v. Spargo, 8 Saw. 645; Bagnell v. Broderick, 13 Pet. 450; Carroll v. Safford, 3 How. 441; Shapley v. Cowen, 91 U. S. 337; Smelting Co. v. Kemp, 104 id. 947.

The respondent is estopped by the conduct and record declaration of his grantor to question this water right.    Morgan v. Railroad Co., 96 U. S. 720.

*Van Cise & Wilson*, for respondent.

Respondent's claim to the water is by virtue of his grantor's settlement in 1877, homestead entry in 1879, final proof and patent in 1883, purchase in 1884, and the continuous residence and cultivation of the land since the settlement.    That of appellant is by virtue of a so-called location of a right on respondent's land in 1880, without a grant from the owner.    Appellant does not sue as a riparian proprietor for a misuse, but as an owner of the water with the right to take it for his exclusive use.    Clearly, respondent has the better right and is the prior appropriator.    C. C., § 255. This section is not in conflict with section 2339, R. S. U. S.    Appellant mistakes respondent's appropriation, it was in 1877, not 1883.    Appellant should have acquired his right prior to the settlement.    Union M. & M. Co. v. Dangberg, 2 Saw. 450, id. 176; Lux v. Higgin, 4 Pac. Rep. 919; S. C., 10 id. 674; Weiss v. Oregon I. & S. Co., 11 Pac. Rep. 255; Van Sickle v. Haynes, 7 Nev. 249; Crandall v. Woods, 8 Cal. 136.    Respondent had a vested right in the land and to the use of the water more than a year before the alleged location.    1 Copp. P. L. L. 387; Red. R. & L. W. R. Co. v. Sture, 20 N. W. Rep. 229, S. C., 32 Minn. 97; Burlington, K. & S. W. R. Co. v. Johnson, 16 Pac. Rep. 125; Even in pre-emption cases, when the right vests, it relates back to the settlement for the purpose of cutting off intervening claims. 16 Pac. Rep., *supra ;* Shepley v. Cowan, 1 Otto, 330.

The use of the water did not ripen into a right.    It was an interest in the land and could only be acquired by grant or prescription.    C. C., §§ 245, 249; Washb. Easem. 18; De Hera v. U. S., 5 Wall. 599; Veghte v. Raritan, 4 C. E. Green, 153; Drake v. Wells, 11 Allen, 141; Foot v. N. H. & N. Co., 23 Conn. 214.

No estoppel grew out of the unexecuted contract between appellant and Smith.    There is a want of all of the elements of an estoppel.    Boggs v. Mercer M. Co., 14 Cal. 279; Philadelphia R. R. Co. v. Howard, 18 Wall. 255.

By the COURT:

The judgment is affirmed. The court holds that the home-steader was the prior appropriator of the water right, and the plaintiff had no right to enter upon the prior possession of the entryman, under his homestead entry, and appropriate any portion of the running streams or creeks thereon.

All of the justices concur except FRANCIS and CARLAND, JJ., who dissent.

REPORTER: — On appeal to the supreme court of the United States the judgment in this case was affirmed. 133 U. S. 541, 10 Sup. Ct. Rep. 350.