MADISON, Appellant, v. CITY OF RAPID CITY, Respondent.

(246 N. W. 283.)

(File No. 7486. Opinion filed December 30, 1932.)

*Bangs & Rudesill,* of Rapid City, for Appellant.
*George Williams,* of Rapid City, for Respondent.

RUDOLPH, J. The plaintiff has appealed from an order sustaining a demurrer to his complaint. The complaint alleges that the plaintiff is the owner of 128 acres of land in Pennington county which his predecessor in title purchased from the defendant city; that, at the time of the purchase of this land from the city, the city was the owner of 160-acre tract, and that the city at the time of this sale retained title to the remaining 32 acres thereof, which title it still holds; that immediately adjacent to and abutting upon the property of the plaintiff lies a tract of land known as the Merrill land, which slopes toward the plaintiff's land; that on the Merrill land, "since time whereof the memory of man runneth not to the contrary, there has been a living spring of water which has at all time except in the dryest of seasons produced an abundant flow of pure water suitable for domestic purposes and for the watering of livestock and the irrigation of lands and the same has at all such times flowed in a natural and unobstructed channel over and across the said Merrill property and down and upon the property of this plaintiff and thence across the property of this plaintiff in its natural channel forming, with the outflow of other springs encountered along its course, a stream of water commonly known as Lime Creek." The complaint further alleges that along the course of said stream and on the property of the plaintiff "there has existed from time immemorial a spring which within the memory of living man has never gone dry, and has at all times produced and contributed to the waters of said Lime Creek." The complaint alleges the use of the water flowing from these two sources for domestic and other purposes, and then alleged that defendant city during the fall of 1930 purchased the property described as the Merrill property, and, by means of a pipe line, appropriated all of the water flowing from the spring on the Merrill property to the use of the city. The complaint further alleges that during the fall of 1930 the defendant city dug a deep trench on the 32 acres that it owned, and that by means of this trench intercepted the flow of subterranean water which, from time immemorial, had its outlet

in the spring on plaintiff's premises, and thereby caused the said spring to become dry and to disappear, and that the city, by means of a large catch-basin, has appropriated this water thus intercepted to its own use and benefit. The complaint asked for damages already accrued and an injunction restraining the defendant from continuing the alleged diversion of the water.

The appellant contends first that, in so far as concerns the water flowing from the spring on the property known as the Merrill property, he has stated a cause of action under section 348, Rev. Code 1919. This section, so far as material here, provides as follows: "Subject to the provisions of this code relating to artesian wells and water, the owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream. Water running in a definite stream, formed by nature, over or under the surface, may be used by him as long as it remains there; but he may not prevent the natural flow of the stream, or of the natural spring from which it commences its definite course."

The respondent contends that, under the above section of our Code and certain decisions of this court, water percolating through the soil or coming to the surface in a spring belongs absolutely to the owner of the soil to the extent that he is entitled to the exclusive rights thereof and to the use of and disposition of the same. The respondent relies in the main upon the case of Metcalf v. Nelson, 8 S. D. 87, 65 N. W. 911, 59 Am. St. Rep. 746; Deadwood Central Railroad Co. v. Barker, 14 S. D. 558, 86 N. W. 619. We concede the rule contended for by respondent as established by these cases. However, it appears in this case that there is an additional element which did not enter into either of the cases above referred to. Conceding for the time being that the complaint alleges that the spring on the Merrill property is the natural spring from which Lime creek commences its definite course, we have in this case the fact that this spring on the Merrill property is the spring from which Lime creek commences its definite course. There was no such contention made regarding the spring under consideration in the Metcalf v. Nelson Case, nor of the underground waters under consideration in the Deadwood Central R. Co. v. Barker Case. We are of the opinion that in this case the

distinction is important. Were there no allegation in the complaint that this spring on the Merrill property was the spring from which Lime creek commences its definite course, then, no doubt, the cases above referred to would be controlling, in so far as the rights of the defendant to appropriate this water are concerned. The question here presented is, Does an allegation in the complaint to the effect that the spring on the Merrill land is the spring from which Lime creek commences its definite course limit the rights on the part of the defendant city in and to the water flowing from this spring? We are of the opinion that it does. The statute provides that he, the owner of the land, "may not prevent the natural flow of the stream or of the natural spring from which it commences its definite course." We are of the opinion that, under the statute, water flowing from a natural spring, from which a stream commences its definite course, is differentiated from the water of a spring from which a stream does not commence its definite course, the difference being that the rights of the owner of the land, upon which the spring is found, is absolute in the water flowing from a spring which is not the source of a definite stream, but his rights in a spring, from which a stream commences its definite course, are limited by the statute which provides that he may use such water while it remains on his land, but he may not prevent the flow thereof. Under this statute, the water of the natural spring, from which a stream commences its definite course, is classified the same as water running in a definite stream formed by nature over or under the surface, and it may be used by the owner of the land only as long as it remains there, but he may not prevent the natural flow thereof. Under the allegations of this complaint, the defendant city has prevented the natural flow of water commencing from the spring on the Merrill land, and it is our opinion, if the complaint alleges that the spring on this Merrill land is the natural spring from which Lime creek commences its definite course, that a cause of action has been stated. We are of the opinion that the fact that this spring is the spring from which Lime creek commences its definite course has been sufficiently stated in this complaint. The complaint alleges that the waters from this spring "flowed in a natural and unobstructed channel over and across the said Merrill property, and down and upon the property of this plaintiff, and then across the property of the plaintiff in its natural channel form-

ing, with the outflow of other springs encountered along its course, a stream of water commonly known as Lime Creek." This we believe to be a sufficient allegation that this spring is the spring from which Lime creek commences its definite course. This being true, it follows that, in our opinion, the trial court erred in sustaining the demurrer to the complaint.

 The complaint does not purport to plead more than one cause of action. However, it was conceded by the attorney for appellant at the trial that it might have been better to have pleaded two causes of action: One for the alleged injuries sustained on account of the diversion of the water from the spring on the Merrill property; the other for the alleged injuries sustained on account of the alleged diversion of the waters of the spring on the plaintiff's property. This not being done, and no objection thereto being made by respondent, and this court being of the opinion that a cause of action has been stated with reference to the water coming from the spring on the Merrill property, it follows that the order entered herein sustaining the demurrer should be reversed. However, we deem it advisable to state our views with reference to the alleged damage and injury claimed because of the alleged diversion of the water by the city from the spring on the plaintiff's property. In this connection it is alleged that the city, by means of digging trenches on land it owned adjacent to the property of the plaintiff, did intercept the flow of subterranean waters, and did thereby cause the spring on the plaintiff's property to become dry and to disappear. Under the authority of the case of Metcalf v. Nelson, supra, it is presumed that the spring on the plaintiff's property was formed and fed by the percolation of water through the surrounding soil and not in the outbreak on the surface of a subterranean stream, there being no allegation to the contrary. Under the holding of this Metcalf Case and the later case of Deadwood Central Railroad Co. v. Barker, supra, there can be no serious contention but that the owner of the soil is the absolute owner of percolating subterranean water. The rule announced in these cases is based upon our now present section 348, Rev. Code 1919, which provides:

"The owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream."

It is the contention of the appellant that chapter 100, Laws 1919, has changed this rule embodied in section 348 and pronounced by the decisions of this court. We do not agree with this contention of appellant. It might be that there is language in this 1919 act which, if taken by itself, would tend to show that the Legislature intended to change the rule, which had been established in this state, regarding subterranean waters generally, but in considering the act as a whole it becomes apparent, we believe, that there was no such intention. The act, in our opinion, was intended to apply only to artesian waters. This, we believe, is shown quite definitely by the first sentence of section 348, which commences, "Subject to the provisions of this code relating to artesian wells and water," etc. This quoted portion of section 348 indicates quite clearly, we believe, that it was the intention of the Legislature to leave in effect the law concerning subterranean water as that law is embodied in said section, except as to artesian waters. This 1919 law, while referring to "artesian and phreatic waters," nevertheless, when considered as a whole, attempts to do nothing more than establish regulations and rules concerning artesian wells. Artesian waters are necessarily phreatic, and, by the simple use of the term "phreatic" in that law, we do not believe there is thereby shown an intention to change the well-established law in this state governing subterranean waters. It follows that we are of the opinion that the plaintiff has stated no cause of action, so far as concerns the spring on his own premises.

It is our opinion that rights of the parties in and to the waters in question were not affected by the fact that the city at one time owned the property now owned by the plaintiff and conveyed the same by warranty deed to plaintiff's predecessor in title.

The order appealed from is reversed.

POLLEY and ROBERTS, JJ., concur.

CAMPBELL, P. J., dissents.

WARREN, J., absent and not sitting.