PLATT, Respondent, v. CITY OF RAPID CITY, Appellant

(291 N. W. 600.)

(File No. 8204. Opinion filed April 17, 1940.)

**Boyd Leedom,** City Attorney, and **Philip & Leedom,** all of Rapid City, for Appellant.

**Bangs & Rudesill,** of Rapid City, for Respondent.

WARREN, J. This is an action by which plaintiff, Maud M. Platt, seeks to recover damages for the diversion and loss of water with which to irrigate her lands. Plaintiff owns a farm lying west of Rapid City along the course of Lime or Limestone Creek. A portion of this land had been under irrigation from Lime Creek, as shown by the evidence, from 1882 to about 1930. It appears from the evidence that in 1930 the City of Rapid City purchased the Merrill Springs and diverted the water therefrom to the city mains by constructing a collecting line to intercept the flow of smaller springs feeding the stream. It would seem that because of this interception of the waters from the natural springs, which the evidence shows had formerly fed Lime Creek, the creek dried up and the Platt farm or ranch was deprived of water with which to irrigate the land. Other statements will be made as we treat the various and different assignments of error. The case was submitted to a jury resulting in a verdict against the city in the sum of $4,891.66. After a motion for new trial and a motion for judgment notwithstanding the verdict had been made and denied, the defendant city perfected an appeal to this Court.

An examination of the evidence has convinced us that it is sufficient to support an inference that the springs in question constitute the source springs from which Lime Creek commences a definite course. Cf. section 348, Rev. Code 1919 [SDC 61.0101]; Madison v. City of Rapid City, 61 S. D. 83, 246 N. W. 283; Benson et al. v. Cook, 47 S. D. 611, 201 N. W. 526.

The city asserts that the cause of action arose during the life of plaintiff's deceased husband, and did not survive. The lands in question were owned by plaintiff's

husband during his life, and came to plaintiff by succession and by transfer from other heirs. The other heirs assigned their interest in the above described claim to plaintiff. This contention is ruled by statute. Section 471, Rev. Code 1919 [SDC 51.0802], "A thing in action is a right to recover money or other personal property by a judicial proceeding." Section 472, Rev. Code 1919 [SDC 51.0803], "A thing in action arising out of the violation of a right of property or out of an obligation may be transferred by the owner. Upon the death of the owner it passes to his personal representatives except where in the cases provided by law it passes to his devisees or successor in office." The wrongful diversion of waters of a stream violates a right of property of a riparian owner and therefore survives under the plain terms of Section 472, supra. Cf. 1 C. J. 193, § 359.

■ That respondent and her predecessors in interest had acquired riparian rights in Lime Creek superior to any rights of appellant is not questioned on appeal. However, appellant contends by various assignments that riparian rights do not embrace the rights to use the water of the creek for irrigation. This view finds support in the holding of the court in the cases of Cook et al. v. Evans et al., 45 S. D. 31, 185 N. W. 262, and Haaser v. Englebrecht, 45 S. D. 143, 186 N. W. 572. Predicated upon a construction of the Desert Land Act of March 3, 1877, U. S. Comp. St. §§ 4674-4678 [46 U.S.C.A. § 321 et seq.], and following the reasoning of Hough v. Porter, 51 Or. 318, 95 P. 732, 98 P. 1083, 102 P. 728, it was held by these cases that no riparian rights in water for irrigation purposes could be acquired subsequent to the enactment of such act. Under the interpretation of these cases that act did two things, viz., (1) it severed the surplus waters of the public domain in arid land states from the land, and (2) it established the law of appropriation as the governing rule through which rights in said waters were thereafter to be acquired. This view led to the conclusion that no riparian rights to use water for irrigation could be acquired through settlements made on the public domain of such states subsequent to the enactment of the Desert Land Act. However, that act has now received authoritative in-

terpretation in the case of California Oregon Power Co. v. Beaver Portland Cement Company et al., 295 U. S. 142, 55 S. Ct. 725, 731, 79 L. Ed. 1356. In that case Cook v. Evans, supra, and Haaser v. Englebrecht, supra, received approval in so far, and only in so far as they hold that congress intended by the Desert Land Act to sever surplus water from the land on the public domain. However, that case clearly shows that this Court erred in Cook v. Evans and Haaser v. Englebrecht in holding that congress intended by the Desert Land Act to set up "appropriation" as the governing rule under which rights in surplus water on the public domain were to be acquired. In dealing with that phase of the matter the Supreme Court of the United States said: "Nothing we have said is meant to suggest that the act, as we construe it, has the effect of curtailing the power of the states affected to legislate in respect of waters and water rights as they deem wise in the public interest. What we hold is that following the act. of 1877, if not before, all nonnavigable waters then a part of the public domain became public juris, subject to the plenary control of the designated states, including those since created out of the territories named, with the right in each to determine for itself to what extent the rule of appropriation or the common-law rule in respect of riparian rights should obtain."

Prior to the holding of Cook v. Evans, supra, as applicable to the period of time here involved, it had been established that rights in the waters of our streams, including the right to irrigate (cf. section 255, Civ. Code of 1877, section 348, Rev. Code 1919, SDC 61.0101), were open to acquisition as riparian rights through settlement and through appropriation under the provisions of Chapter 142 of the Session Laws of 1881. St. Germain Irrigating Ditch Company v. Hawthorne Ditch Company et al., 32 S. D. 260, 143 N. W. 124; Lone Tree Ditch Co. et al. v. Cyclone Ditch Co. et al., 15 S. D. 519, 91 N. W. 352; Id., 26 S. D. 307, 128 N. W. 596; Redwater Land & Canal Co. v. Jones, 27 S. D. 194, 130 N. W. 85; Redwater Land & Canal Co. v. Reed et al., 26 S. D. 466, 128 N. W. 702; Driskill et al. v. Rebbe et al., 22 S. D. 242, 117 N. W. 135; Id., 28 S. D. 331, 133 N. W. 246; Stenger

v. Tharp et al., 17 S. D. 13, 94 N. W. 402; Sturr v. Beck, 6 Dak. 71, 50 N. W. 486; Id., 133 U. S. 541, 10 S. Ct. 350, 33 L. Ed. 761.

■■ That the rights of plaintiff and her predecessors in interest must be determined by the law thus established, follows from the authoritative interpretation of the Desert Land Act from which we have quoted. United States, Pershing County Water Conservation Dist. of Nevada et al., Interveners, v. Humboldt Lovelock Irr., Light & Power Co., 9 Cir., 97 F.2d 38. It follows that we are of the opinion that the learned trial court did not err in ruling that plaintiff's riparian rights included the right to irrigate her lands from Lime Creek. In arriving at this conclusion we have not been unmindful of the rule of stare decisis. Interpretation of the Desert Land Act can not be said to have been settled until it had been passed upon by the Supreme Court of the United States. The ruling of this court did not, therefore, create an established rule of property. 14 Am. Jur. 290, § 74; Calhoun Gold Mining Co. v. Ajax Gold Mining Co., 27 Colo. 1, 59 P. 607, 50 L.R.A. 209, 83 Am. St. Rep. 17.

■ By assignment of error No. 11 appellant insists that it is entitled to a new trial because of the misconduct of the jury in considering facts not in evidence, also that the said jury reached the amount of its verdict by a determination by chance. Appellant has discussed Long v. Collins, 12 S. D. 621, 82 N. W. 95, and Abdenor v. Gould, 45 S. D. 101, 186 N. W. 120, in its brief and in its closing comments said: "* * * indicating that a quotient verdict need not always be an illegal verdict. These suggestions of the court became the law in the case of Abdenor v. Gould, and appellant concedes that unless the instant case can be distinguished in fact from the Abdenor case, the latter is of course controlling.", Appellant then submits that in the instant case there is a new element that has not been passed upon, stating that it appears from the affidavits of certain jurors "that prior to the striking on the quotient plan the highest damage urged by any juror was $5,000 but that two of the jurors submitted $7,000 and $8,000 for their figures", thereby increasing the damages against the appellant.

Considerable has been written upon quotient verdicts but in our search we have found no South Dakota authority squarely in point upon this proposition and counsel has failed to furnish us with such specific authority. From an examination of the affidavits submitted by the appellant and those submitted by respondent touching upon what appellant calls a quotient verdict, it would seem that the deliberations were at all times open and that no one of the jurors had bound himself to any specific method as to how to arrive at the verdict, but that it was open for further consideration as to the amount of damages that were to be awarded and that each member of the jury was at all times free to fix any amount he believed the respondent entitled to and that when the element of damages had been discussed and different amounts had been suggested all of the jury finally agreed upon the specific amount of $4,891.66. The following authorities have been helpful in arriving at and determining the issues in this assignment: Alexander v. Mud Lake Lumber Co., 153 Mich. 70, 116 N. W. 539; Crawl v. Dancer, 180 Mich. 607, 147 N. W. 495; Griffith v. Oak Ridge Oil Co., 190 Cal. 389, 212 P. 913; Great Northern Ry. Co. v. Benjamin et al., 51 Mont. 167, 149 P. 968; Ham et al. v. Los Angeles County et al., 46 Cal. App. 148, 189 P. 462; Herbert v. Katzberg, 104 Neb. 395, 177 N. W. 650; Janesovsky et al. v. Rathman et al., 107 Neb. 165, 185 N. W. 411; Wells v. Clark & Wilson Lumber Co., 114 Or. 297, 235 P. 283; Galveston, H. & S. A. Ry. Co. v. Bosher, Tex. Civ. App., 165 S. W. 93; Houston Electric Co. v. Schmidt, Tex. Civ. App., 244 S. W. 1110.

In Houston Electric Co. v. Schmidt, supra, the court treated the matter of some of the jurors raising the amount and others lowering their original amounts and held that it was not an improper method of arriving at the verdict.

■ We believe that appellant has failed to show the necessary element of pre-arrangement among the jurors to accept a quotient verdict. This, we take it is essential in order to establish its right to have the verdict set aside and we quote from Ingram v. Poston, Mo. App., 260 S. W. 773, 775: "It is the rule in this jurisdiction that a party who at-

tacks a verdict upon the ground that it is a quotient verdict must show that there was a prearrangement among the jurors to accept the quotient as their verdict; the presumption being that there was no such prearrangement. Ownby v. Kansas City Rys. Co. (Mo. App.) 228 S. W. 879; Hagan v. Mining Co., 131 Mo. App. 386, 111 S. W. 608. And it is also settled that the evidence of a juror will not be received to impeach the jury's verdict. McMurdock v. Kimberlin, 23 Mo. App. 523; Devoy v. Transit Co., 192 Mo. 197, 91 S. W. 140."

■ The other element of alleged misconduct raised by this assignment deals with the request made by the jury for a statement from the judge as to the location of Merrill Springs. It would seem that the jury had retired to deliberate and that they returned into the court room in the presence of both counsel and asked for information as to the proximate location of Merrill Springs and as to the location of the pipe line. The Court said: "This plat isn't big enough to show the springs, and in talking with the attorneys I am advised that they are agreed and state that the springs are up the draw about three-quarters of a mile from the city springs." That this could be construed as being prejudicial error and that the court's statement definitely turned the jury to a verdict against the appellant is unbelievable. Counsel were present; the record is silent as to any objection. The fact that the court made the statement that he had talked with the attorneys and the court's statement to the jury in the presence of counsel was passed without objection or an attempt to make an exception to the court's remarks ought not to work a reversal. We fail to see that any prejudice resulted from the statement made to the jury in the presence of counsel who seemingly acquiesced.

■ And finally the refusal or denial of a new trial on the alleged misconduct on the part of the jury is as a general rule a matter within the discretion of the judge presiding at the trial. Sales v. Maupin et al., 35 S. D. 176, 151 N. W. 427, Ann. Cas 1917C, 1222. The trial court having passed upon the affidavits presented upon the motion for new trial and having reached the conclusion that there had been

no misconduct of the jury and no abuse of the trial court's discretion being shown we will not disturb it.

Complaint is made of the fact that the court submitted a form of verdict to the jury including interest from the date the summons and complaint was served. It is said that the court did not submit the question of the allowance of interest to the jury under section 1963, Rev. Code 1919 (SDC 37.1712), which section provides, "In an action for the breach of an obligation not arising from contract, * * * interest may be given, in the discretion of the jury." The instructions of the court as a whole not being before us, we must presume that the matter was properly submitted to the jury.

Other matters assigned have been carefully considered and are deemed not to merit discussion.

Finding no error in the record, the judgment and order of the trial court are affirmed.

All the Judges concur.