STATE, Respondent, v. GOFF, Appellant

(52 N. W.2d 300)

(File No. 9230. Opinion filed March 4, 1952)

Rehearing denied April 19, 1952

**Thos. G. Wall,** Sturgis, for Defendant and Appellant.

**Ralph A. Dunham,** Atty. Gen., **Russell Molstad, Phil W. Saunders,** Asst. Attys. Gen., **Richard B. Denu,** State's Atty., Meade County, Sturgis, for Plaintiff and Respondent.

RUDOLPH, J. The information charged defendant, Arthur Goff, with shooting Maynard Newcomb with intent to kill. The jury found him guilty of the included offense of shooting with intent to do bodily harm. The defendant has appealed from the judgment and from an order denying his motion for a new trial. We affirm the judgment and order denying a new trial.

The defendant admitted the shooting but sought to defend on the ground that he acted in the necessary defense of his wife and of himself. The defendant shot his sister's husband. The shooting took place in Meade county in the vicinity of a gate in a fence which separates the respective ranch pastures of defendant and his sister, Mattie Newcomb.

There was a background of ill feeling between the families over the leasing of certain lands.

According to the witnesses for the state, the sister, her husband, and two young men who were assisting them in branding calves, were in her pasture searching for calves. The sister and one young man had gone in the direction of the above described gate, and her husband and the other young man had taken a different course. Having found some of defendant's cattle and horses in her pasture the sister opened the gate and drove them through. At about that time a shot was heard. Thereupon the sister's husband and his companion joined her and the other young man at the gate. As they arrived defendant's wife rode up alone and told them to get off that land and stay off, to which defendant's sister replied that was her land; about that time defendant and one of his boys rode out of a draw a short distance away. As they rode toward the gate nothing further was said or done by anybody, and immediately after defendant brought his horse to a stop at the gate, he com-

menced shooting and one shot struck Newcomb. Thereupon the sister's husband rode at defendant swinging his six-foot braided leather cattle whip. As he came forward defendant turned his horse toward home, and as they rode Newcomb was striking defendant with the whip and defendant was shooting. Shortly, because of the condition of his horse, Newcomb withdrew, and the shooting was discontinued. Newcomb's horse died shortly after he had reached the Newcomb pasture. Four of defendant's shots hit Newcomb and three of his shots struck the horse. Fortunately Newcomb's wounds were not critical. According to these witnesses, the sister, and the two young men took no part in the affray, and the defendant's wife was in no way involved therein.

Defendant's witnesses tell a very different story. Defendant's wife testified that her two young sons came into the house and told her that the Newcombs were running the Goff cattle and horses, that she and her husband went oustide and observed this to be a fact. Mrs. Goff then got the gun and after her husband had saddled his horse gave the gun to him and she, her husband and one son started on horseback toward the gate. She testified that she arrived at the gate before her husband and son and a heated argument was had with the Newcombs. That the Newcombs rode through the gate at her and struck her over the head and shoulders with their cattle whips. Those whips are described as made of braided leather which tapers down to a lash, and as about six or seven feet in length. The defendant and the son had halted their horses some little distance away. As soon as the Newcombs rode at Mrs. Goff, Goff and his boy rode up as fast as they could and Goff fired a shot at the ground in an attempt to end the attack on his wife. Thereupon, both Newcomb and his wife rode at defendant striking him with their whips, and as he rode away with the Newcombs lashing at him defendant continued to shoot. According to defendant's boy, one of the young men took some part in the affray. The boy testified that the young man was swinging his lariat over his head in an attempt to rope defendant. The boy said he rode his horse in between them and crowded the young man out of the affray by

striking his horse with his long bridle reins. These witnesses testified that the sister continued to chase and strike defendant after her husband had withdrawn.

Appellant's first group of assignments of error relate to the rulings of the court on the admission of evidence. We have considered these assignments and believe only one merits discussion. After the shooting the Goffs went to Philip, the county seat, and advised the state's attorney, Mr. Wirkus, of the events. Mr. Wirkus was called as a witness and testified that Mrs. Goff complained of pain in her shoulder and arm. He was then asked whether from his observation she appeared to be suffering pain. This question was objected to and the court refused to permit an answer. A Mr. George Hart drove Mrs. Goff from Philip to Kadoka to consult a doctor. Mr. Hart testified that during the trip Mrs. Goff complained of a headache, a bump on the top of her head and pain in her arm and shoulder but he, likewise, was not permitted to give his opinion as to whether she was suffering pain.

Conceding that the trial court erred in refusing to permit the two witnesses to give their opinion as to whether Mrs. Goff was suffering pain, we, nevertheless, believe the record overcomes any showing of prejudice therefrom. Mrs. Goff testified in detail regarding the pain she suffered following the affray; each of the two witnesses testified that Mrs. Goff was complaining of pain, and it appears without dispute that she consulted a doctor in regard to this pain about which she was complaining. On the issue of whether Mrs. Goff was suffering pain the opinion of these non-expert witnesses would add little if anything to the undisputed facts appearing in the record. The question of whether Mrs. Goff was suffering pain when at Philip was in no way disputed by the state, so if an issue at all, it was a very minor issue in the case. We are convinced this court should not send the case back for a new trial because these lay witnesses were not permitted to express an opinion upon such an issue and regarding which their opinion could add little if anything to the undisputed facts appearing in the record. 24 C.J.S., Criminal Law, § 1887; 3 Am.Jur., Appeal and Error, Sec. 1003.

■ Appellant made a motion for a new trial which was in part based upon alleged misconduct of the jury. The supporting affidavits alleged that during the trial a juror was seen conversing with two witnesses for the state. A portion of the conversation was allegedly overheard and bad faith therefrom was imputed to the juror. Rebuttal affidavits were submitted by the juror and witnesses wherein the asserted facts were categorically denied. These affidavits presented to the trial court an issue of fact which was ruled adversely to appellant. No abuse of discretion is shown. The order denying a new trial under these circumstances will not be disturbed. Sales v. Maupin, 35 S. D. 176, 151 N.W. 427; Platt v. City of Rapid City, 67 S.D. 245, 291 N.W. 600.

■ The evidence was in sharp conflict regarding the events leading up to the shooting. The jury elected to believe the version of the state, which version is ample to justify the verdict returned. We believe the statement of facts above set out is sufficient to justify this conclusion and no further discussion is necessary.

The judgment appealed from is affirmed.

SICKEL, P. J., and ROBERTS and LEEDOM, JJ., concur.

SMITH, J., dissents.