**TAYLOR REALTY CO., a South Dakota Corporation, Plaintiff and Appellant,**

v.

**Bill HABERLING, Defendant and Appellee.**

**No. 14113.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 17, 1984.

Decided April 10, 1985.

Edwin E. Evans, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellant; Michael J. Schaffer, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on brief.

Steven W. Sanford, of Cadwell, Sanford & Deibert, Sioux Falls, for defendant and appellee; William C. Garry, of Cadwell, Sanford & Deibert, Sioux Falls, on brief.

MARTIN, Circuit Judge.

Plaintiff, Taylor Realty Company, appeals from a judgment and from a subsequent order denying its motion for a new trial on the issue of damages. We affirm.

This action arises out of a lease of real property owned by plaintiff. The property in question consists of a gasoline station located just outside the city limits of Sioux Falls, South Dakota. On February 26, 1976, plaintiff leased the gas station to defendant for a term of five years beginning March 1, 1976. The lease provided, among other things, that both plaintiff and defendant had the right to terminate the lease upon written notice. Upon receipt of that notice defendant had ninety days within which to vacate the leased premises. Defendant would of course be responsible for the payment of rent throughout the ninety-day period.

On February 1, 1979, the parties executed a second lease agreement. This lease was again for a five-year period and provided, among other things, that only plaintiff had the right to terminate the lease by delivering written notice of termination. Upon receipt of notice of termination defendant had ninety days to vacate the leased premises. Defendant was responsible for the payment of rent throughout the ninety-day period.

On the same day the second lease was executed defendant assigned the lease and sold his business to Charlson. Defendant, however, remained liable for the rental payments under the lease.

On or about January 31, 1979, about the same time as the business was being transferred from defendant to Charlson, defendant discovered a shortage of approximately 6,000 gallons of gasoline from his inventory. A gasoline equipment supplier was called in to investigate the possibility of a gasoline leak. Upon completion of the repair work, no more product loss was reported. Early in March of 1979, however, the South Dakota Geological Survey was called in to investigate the leak and recover as much gasoline as possible. Engineers estimated that between five and fifteen thousand gallons of gasoline had leaked into the ground. Officials estimated that a gasoline leak of this magnitude could not have occurred in a short time.

On March 22, 1979, an explosion occurred in the service station. On March 28, 1979, Charlson gave plaintiff written notice of termination of the lease. On March 29, 1979, defendant gave plaintiff written notice of termination of the lease. The notice given to plaintiff by both defendant and Charlson said that termination was given pursuant to paragraph 11 of the second lease agreement. Paragraph 11 provided for cancellation by either party if the premises were damaged by fire or other casualty to such an extent that the premises were unfit for occupancy.

From that point on, defendant did not pay rent to plaintiff. After the premises were vacated in late March of 1979, the station stood vacant for approximately two and one-half years until plaintiff leased the premises to an individual engaged in small motor repair. Plaintiff subsequently started this action against defendant for lost rent, profits and real estate taxes. Plaintiff pled three separate theories of recovery, breach of contract, negligence and nuisance.

The jury was instructed on each theory of recovery. The negligence and nuisance actions, however, were not supported by evidence of damages. The only evidence of damages submitted to the jury was relative to the breach of contract theory. Therefore, the actual issue in the case is whether the defendant breached the leasing contract or contracts.

The jury returned a verdict for the plaintiff in the amount of $4,548.36. Attached to the verdict form was a calculation of damages completed by the jury:

| | |
|---|---|
| Rent—three months × $550 ........ | $1,650.00 |
| Gallonage—three months × $300 .... | 900.00 |
| Taxes (six months) ................. | 215.15 |
| Repairs (Sioux Equipment) .......... | 371.65 |
| Interest (15% over three years) ...... | 1,411.56 |
| TOTAL ..................... | $4,548.36 |

Plaintiff not only appeals from the judgment rendered by the jury but also from the trial court's denial of a motion for new trial. The motion for new trial was based on three grounds: (1) The jury's verdict was contrary to the law, the instructions and the evidence; (2) The evidence was

insufficient to justify the jury's verdict as to damages; and (3) The jury's award of damages was so inadequate that it appeared to be the result of passion or prejudice.

Defendant argued that he had given a sufficient notice of termination of the lease and that plaintiff was exposed to damages for only a ninety-day period. There seems to be no doubt that defendant's argument was successful to the jury since the jury rendered a verdict for plaintiff for damages for a ninety-day period. The problem, however, is that the jury was asked to decide a breach of contract issue. In effect, however, the jury determined a notice of termination issue which it was not asked to do by the court's instructions. Therefore, it appears that the plaintiff's position that the jury's verdict was contrary to the law and to the instructions has merit.

Upon close review of this record, it appears that a ninety-day termination privilege was extended to both plaintiff and defendant under the first lease. The first lease, however, was terminated by mutual consent by execution of the second lease. SDCL 43–32–22. Therefore, a question arises as to whether defendant could even make use of the ninety-day termination privilege. This question was not resolved by the court or by counsel or by instructions to the jury. It should also be noted that the notice of termination of lease sent to the plaintiff by defendant dated March 29, 1979, specifically referred to the casualty termination provision in paragraph 11 of the *second* lease. Again, defendant did not have a ninety-day termination privilege under the second lease and again, this question was not resolved in any manner by counsel or by any jury instructions.

There were no instructions to the jury regarding interpretation of leasing contracts; no instructions regarding which lease agreement (or both) was in effect at the time of the alleged loss; no instructions regarding termination of the leasing contract; and no instructions regarding damages in the event termination was effectuated. How then did a jury sidestep the court's instructions and go on to interpret the leasing contracts in issue as well as

determine whether the notice of termination was effective? The answer is simple. Counsel assented to this procedure.

At the close of plaintiff's case, defendant moved for a directed verdict. Defendant did so on the basis that he had the right to terminate the lease on a ninety-day written notice and that any damages would be limited to the period of the notice, which in fact would be ninety days. Plaintiff resisted the motion and said:

"With reference to damages, of course that is an argument. I think it is an argument to be made to the jury. I believe it is an issue for the jury to decide, number one, and number two, that certainly wouldn't govern the action based upon the nuisance and negligence theories. Mr. Sanford might argue the point but I would point out to the Court that there have been several cases where there have been exactly this type of termination agreement in leases where both the South Dakota Supreme Court and the Eighth Circuit Court of Appeals, the Federal Court, have allowed the issue to go to the jury and said that it is for the jury to consider, but it doesn't limit the damages."

When plaintiff argued its motion for a new trial, defendant made the following record:

"Your Honor, in response the question as to the interpretation of what it means where there are no ambiguities ordinarily a contract is for the Court to decide what its meaning is. We submitted instructions as to the interpretation of the contract, assuming that would be a question of law. Mr. Evans included in his instructions the reference, which, in effect, supported his interpretation of law. All those instructions were either redone, withdrawn or refused and the idea being that we were both going to argue the effect of the contract to the jury and that it was a jury question as to what the contract meant or as to what both contracts meant."

To this statement the court commented:

"Well, my recollection is that the matter was submitted to the jury along the lines that Mr. Sanford [defense counsel] has argued, that it was up to them to decide.... And I do know that they had extensive evidence to sift through and that the instructions were basically agreed to. Both leases were submitted to them."

The closing arguments of counsel were not made a part of this record. The record made at the time plaintiff argued its motion for a new trial gives a good indication of what was argued. Apparently no objections were registered by plaintiff. At the hearing on the motion for new trial defendant made the following remarks:

"All right, the jury question regarding the contract having been submitted to them, the jury was free to interpret the contract as we argued; that in fact, we had a right to terminate and that the plaintiff can recover damages for no longer than he could have held us to the lease because that was the basis of damages. That was a very nice calculation of the damages. It was all based on the rights under the lease and I think the law clearly is that you can't hold a tenant liable for back rent for any longer than it would have been legally obligated to pay rent, and in fact, that is what the jury decided. They decided it in a very orderly fashion without passion and prejudice. They simply accepted the argument that the defendant made as to the interpretation of the lease, the very argument that was decided would be submitted to the jury and there certainly was sufficient amounts of evidence for the jury to decide this case as they did. I mean, they didn't just roll the dice and say, 'Well, let's compromise on a number.' They accepted our arguments and methodically calculated out the various elements of damages and awarded a precise verdict, a precise dollar and cents number based on acceptance of that argument."

In its brief, plaintiff states that "Counsel for Haberling, [defendant] however, argued to the jury ... the theory that damages should be limited to the 90-day notice period...." From this record, it appears that plaintiff, rather than submitting instructions to the jury regarding interpretation of the contracts and notice of termination, agreed or did not object to submitting these matters to the jury for determination. Plaintiff cannot now be heard to complain.

5 Am.Jur.2d Appeal and Error § 709, provides:

The general principles of estoppel and waiver underlie many of the more particular rules which have been developed to condition the right to, or the scope and extent of, appellate review. Thus, the rules that a party appealing cannot complain of errors which he did not raise and reserve in the trial court ... seem to be based on such principles.

5 Am.Jur.2d Appeal and Error § 713, provides:

The doctrine of "invited error" embodies the principle that a party will not be heard to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit. It has been held that for the doctrine of invited error to apply it is sufficient that the party who on appeal complains of the error has contributed to it.

5 Am.Jur.2d Appeal and Error § 720, provides:

*One of the particular applications of the doctrine of invited error is that a party cannot successfully complain on appeal about error of the trial court in submitting a question to the jury which the court itself should have determined as a matter of law where the submission to the jury was done at his request or suggestion.* (Emphasis supplied)

In *Platt v. City of Rapid City*, 67 S.D. 245, 291 N.W. 600 (1940), an action seeking to recover damages for the diversion and loss of water with which to irrigate plaintiff's lands, the jury had retired to deliberate. They returned to the courtroom and, in the presence of both counsel, asked for information about the location of Merrill Springs and the location of a pipeline. The court said: "This plat isn't big enough to show the springs, and in talking with the attorneys I am advised that they are

agreed and state that the springs are up the draw about three-quarters of a mile from the city springs." 67 S.D. at 252, 291 N.W. at 604. Counsel for appellant alleged prejudicial error because the court's statement turned the jury to a verdict against the appellant. The Supreme Court said:

Counsel were present; the record is silent as to any objection. The fact that the court made the statement that he had talked with the attorneys and the court's statement to the jury in the presence of counsel was passed without objection or an attempt to make an exception to the court's remarks ought not to work a reversal. We fail to see that any prejudice resulted from the statement made to the jury in the presence of counsel who seemingly acquiesced.

67 S.D. at 252, 291 N.W. at 604.

In this case plaintiff simply acquiesced and assented to letting the jury decide these issues notwithstanding the fact that these issues were not contained in the court's instructions. Plaintiff cannot be heard to complain of matters to which he acquiesced.

The jury's verdict is affirmed.

FOSHEIM, C.J., and WOLLMAN, J., and DUNN, Retired Justice, concur.

HENDERSON, J., dissents.

MARTIN, Circuit Judge, sitting for MORGAN, J., disqualified.

WUEST, Circuit Judge, acting as a Supreme Court Justice, not participating.

HENDERSON, Justice (dissenting).

I would reverse and remand as disclosed below.

This jury made an error on the question of damages and damages alone; thus, a new trial on that single issue is necessary. *J.H. Larson Elec. Co. v. Vander Vorste*, 81 S.D. 296, 134 N.W.2d 500 (1965). Further, I would platform my dissent on SDCL 15–6–59(a)(6), which provides, inter alia, that a new trial may be granted on the ground that the verdict is against the law.

There was no conflict in the evidence on damages. Tenant presented no damage ev-

idence. No cross-examination of landlord's witnesses took place. Landlord presented testimony in the amount of $35,261.45. In arriving at a damage verdict, this jury erroneously applied the 90-day period for notice of termination by the tenant which was no longer in effect. The majority opinion recognizes this concept but affords no relief therefor. The verdict is therefore unsupportable in law and landlord is entitled to a new trial on damages based upon this error and the insufficiency of evidence to support the verdict. *Lewis v. Storms*, 290 N.W.2d 494, 497 (S.D.1980).

Specifically, the damage verdict of $4,548.36 was submitted in (a) verdict form and (b) a handwritten note setting forth the basis for its damage calculations. It is obvious the jury's award was based on a clause in a superseded lease which permitted tenant to vacate the premises in question on 90-day's written notice.

Tenant moved for a directed verdict on the issue of damages. He argued that damages should be limited to 90-day's rent, based upon his right to terminate under the original lease upon 90-day's written notice. The trial court denied this motion. Furthermore, tenant proposed instructions which would have limited recovery to the 90-day notice period in the original lease; again, the court denied this requested instruction. As the reader can see, by the majority opinion's declaration of the content of the jury's handwritten note, the jury calculated damages contrary to that which the court refused by way of instruction. Moreover, the court gave explicit instructions on the elements of damages and the jury was bound to follow the instructions of the court. The trial court gave the following instructions on the elements of damages:

If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate plaintiff for such elements of detriment or damage proved by the evidence to have resulted from the acts or omissions of the defendant whether such detriment could have been anticipated or not, namely:

1. Any and all extra costs and expenses, including taxes, incurred by plaintiff;

2. Any and all lost profits and rents incurred by plaintiff.

Whether any of these elements of damage have been proved by the evidence is for you to determine. Your verdict must be based on evidence and not upon speculation, guesswork or conjecture.

There was no objection or exception taken by the tenant to this instruction on damage. Rather, as I have heretofore pointed out, tenant had his own theory of damages which was to restrict the landlord to rental for a 90-day period. Where "the jury has palpably mistaken the rules of law by which damages in the particular case were to be measured," the verdict shall be set aside. *Hanisch v. Body*, 77 S.D. 265, 268, 90 N.W.2d 924, 926 (1958) (citations omitted).

The majority opinion, comforting its legal posture, takes haven in after-the-fact statements made by the tenant in post-trial proceedings. The crucial question on whether or not this "acquiescence theory" surfaces and estops landlord from asserting this lawful position, is grounded upon legal positions taken at the trial itself. (Reconstructed assertions which are self-serving are not the exact positions taken at trial.) When landlord's counsel, in resisting tenant's motion for a directed verdict, expressed that damages could be argued to the jury, it is clear that landlord was fighting against a directed verdict and it was vividly clear that tenant was not entitled to a directed verdict. At this time, counsel for landlord, by expressing "but it doesn't limit the damages," was expressing a rightful position and in accordance with the facts before the trial court, namely, that the 90-day limitation did not apply and that landlord was entitled to damages in excess of 90 days. Therefore, I disapprove of the "acquiescence theory" upon which the majority opinion has bottomed its decision.

Landlord's motion for a new trial on damages only was based upon a sound premise, i.e., that the award was contrary to the evidence, instructions, and the law. I agree that the jury "sidestepped" the instructions but must disagree that landlord assented to this procedure. Closing arguments were not recorded. They are not part of the record. Hence, reconstruction of same is improper by any party and should not be used as the basis for decision herein. The motion for new trial on the issue of damages only was improperly denied, and I therefore respectfully dissent.