J. H. LARSON ELECTRICAL COMPANY, Respondent

v.

R. W. VANDER VORSTE, et al., Appellants

(134 N.W.2d 500)

(File No. 10054. Opinion filed April 19, 1965)

Rehearing denied October 21, 1965

**Virgil E. Vail and Davenport, Evans, Hurwitz & Smith, Lyle J. Wirt,** Sioux Falls, for defendants and appellants.

**Austin, Hinderaker & Hackett,** Watertown, for plaintiff and respondent.

ROBERTS, P. J. The defendant R. W. Vander Vorste, doing business under the name of Community Electric Company of DeSmet, South Dakota, entered into a contract with the town of Akron, Iowa, for improvements and extensions to the town's electric light plant. The contractor, as principal, and defendant New Amsterdam Casualty Company, as surety, furnished a bond conditioned on performance of the contract and payment of all just claims as they become due for work performed and materials furnished in connection with the contract.

The complaint alleges that plaintiff furnished to defendant contractor electrical materials of the reasonable value of $8,404.80 which were used in the prosecution of the work provided for in the contract with the town of Akron and that there is an unpaid balance of $6,897.68.

Defendants answered admitting that plaintiff did furnish electrical materials, but denied that there is an unpaid balance and by counterclaim sought recovery in damages resulting from the sale and delivery of various items of electrical supplies and materials including 40 electrical transformers to be used in other installation work; that the electrical transformers were delivered at various project sites; that deliveries were made later than had been agreed upon between the parties; and that the transformers were of the wrong voltage and defective and not in conformity to plans and specifications. Plaintiff's reply denied all allegations in the answer inconsistent with those alleged in the complaint. With issues thus joined, trial was by a jury. The court instructed the jury that plaintiff was entitled to recover judgment against defendants in the amount of $6,276.93 and that the only issues for their determination were those presented by defendants' counterclaim. The jury answering special interrogatories assessed as damages (1) $1,455.47 which was the dif-

ference between the cost of the wrong-voltage transformers and the amount received from their sale, (2) $13,544.53 attributable to the furnishing of wrong-voltage transformers and (3) $3,952.78 attributable to the furnishing of defective transformers. The total amount of damages thus assessed was $18,952.78. The court entered judgment in favor of defendants Vander Vorste and surety and against plaintiff for $14,300.17 based upon the special verdict, less the amount of $6,276.93, together with interest and costs.

After hearing plaintiff's application for new trial, the court ordered that plaintiff be granted a new trial "unless the Defendants * * * shall file in the office of the Clerk of the above entitled Court * * * their written consent or consents to the reduction of the judgment entered in the above entitled matter by the sum of $10,319.58 so as to reduce the principal amount of the judgment, exclusive of costs, to $3,845.04 * * *." Defendants did not consent to the reduction as a condition to letting the verdict stand for the remaining amount. The appeal is from this order.

■ The court when granting a new trial must specify each and every ground therefor. SDC 1960 Supp. 33.1611. The causes for a new trial include: "(1) Irregularity in the proceedings of the Court, jury, or adverse party or any order of the Court or abuse of discretion by which either party was prevented from having a fair trial; * * * (3) Accident or surprise which ordinary prudence could not have guarded against; (4) Newly discovered evidence, material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial; * * * (6) Insufficiency of the evidence to justify the verdict or other decision or that it is against law; * * *." SDC 1960 Supp. 33.1605. These are the grounds on which the order is based.

It appears from the evidence that defendant Vander Vorste entered into a contract dated December 10, 1958, with Brezina Construction Company, Rapid City, South Dakota, to install transformers and other electrical equipment to service dwellings for the United States Air Force at Minot and Dickinson, North

Dakota, and Havre and Lewistown, Montana. Vander Vorste also entered into a contract on February 5, 1959, with Bob Eldridge Construction Company, Kansas City, Kansas, to do similar work and furnish materials including transformers to service dwellings for the United States Air Force at Osceola, Wisconsin, and at Baudette and Willmar, Minnesota. In the month of March, 1959, Vander Vorste obtained prices from United Electric Supply Company, Sioux Falls, South Dakota, and other suppliers for electrical transformers. Charles Pahl, manager for plaintiff company, called at the place of business of Vander Vorste in De Smet, South Dakota, to obtain information as to material requirements for the Air Force housing projects. It is admitted that Pahl examined the bid which United Electric Supply Company had submitted to Vander Vorste. It was from this bid that Pahl copied information as to the number of transformers and voltage. The bid of United Electric Supply Company listed wrong voltage for 22 of the 40 transformers included in its bid. Plaintiff insists that the erroneous information was furnished by Vander Vorste, but the jury came to a contrary conclusion. Vander Vorste's testimony is that by telephone Pahl agreed that his company would supply the 40 transformers for an agreed price which was computed by taking the catalog prices and multiplying by 47, and that in response to a request that a purchase order be submitted Vander Vorste mailed to plaintiff company at Watertown, an order reciting "40 transformers $18,287.96 F.O.B. job sites" and "Locations and quantities to follow after shop drawings approved." It contained the correct description and voltage of transformers for each of the seven projects. Plaintiff denied that it ever received this purchase order of April 2, 1959.

The plans and specifications for the several projects were available in Vander Vorste's office when Pahl copied the erroneous information contained in the bid of United Electric Supply Company. He admitted that if he had examined the specifications he would not have furnished by telephone the wrong voltage to the factory representative. When Vander Vorste received the factory shop drawings back from the prime contractors approved by the United States Air Force and the architect Vander Vorste forwarded these drawings to plaintiff along

with a second purchase order dated June 26, 1959, setting forth descriptions and number of transformers to be shipped to each of the seven project sites. This purchase order showed the voltage of 22 transformers as 7200 V Wye, which means locally in the electrical supply business according to witnesses testifying for Vander Vorste 7200/12470 Y, which was the correct voltage.

■ The parties placed different constructions upon their contract. On April 16, 1959, the manufacturer sent to Pahl two copies of its proposal and eighteen copies of shop drawings. The drawings as we have indicated were sent to Vander Vorste and by him to the prime contractors. These drawings and data describe transformers as they were manufactured and shipped. Plaintiff contends that this showed what the manufacturer proposed to furnish and constituted a counter proposal which did away with the force and effect of the purchase order of April 2, 1959. Counsel assert that Pahl was not in position to quote a price for the transformers until the manufacturer's proposal of April 16 was received and that inclusion of the price of $18,287.96 by Vander Vorste rendered incredible evidence of the execution and mailing of the order on April 2. The evidence was such as to present a jury question. Vander Vorste testified that before he prepared the purchase order Pahl agreed to furnish the transformers at the lump price above stated arrived at by taking catalog prices.

The wrong-voltage transformers which had been shipped to four of the project sites were returned by Vander Vorste to plaintiff at Watertown. They were sold and Vander Vorste was credited on his account with the amount of the resales. Plaintiff ordered 22 replacements of correct voltage. The evidence discloses that Vander Vorste because of the necessity of the replacements, defective transformers and late deliveries could not complete his contracts on schedule. The contracts between the United States and the prime contractors required completion of all the dwellings in a project before acceptance. Without transformers of correct voltage some of the dwellings could not be adequately heated and damage from freezing resulted. There were expenditures for repairs, additional fuel oil to heat the dwell-

ings, and trips to the project sites for the purpose of replacing or repairing transformers because of wrong voltage or defects.

The court sustained the motion for new trial on the grounds above indicated. The court stated that the evidence was insufficient in the following particulars to sustain or justify the verdict:

"The Defendant claimed that there were defective transformers at Lewistown, Montana, that caused delay for which the prime contractor, Brezina Construction Co., made back charges against him for some undisclosed amount of fuel oil and for $3,350.00 for extra carpenter work done by one, Ed Tucker. The evidence was undisputed that there were no wrong voltage transformers involved at Lewistown, but that one 50 KVA transformer was not shipped until the latter part of September. In the trial it was not shown as to when this transformer was hung, but it has since been admitted by the Defendant Vander Vorste that said Defendant did not hang the same after arrival or until on or about November 6, 1959; that the delay was not the fault of the Plaintiff but of the Defendant. The evidence further established that there was great delay beyond November 1, 1959, the date when the project was to be completed, on the part of the Defendant in getting the wiring and other electrical work completed in the houses and the street lights hung, which was the actual cause of delay and the need for use of additional fuel oil; that there was no competent evidence that the Brezina Construction Company ever paid $3,350.00 or any amount whatever to Ed Tucker for additional carpenter work or became liable to him in any amount so as to be entitled to back charge any such amount against the Plaintiff; that there was only one defective transformer at Lewistown; that the same was replaced without charge by Pennsylvania Transformer Co. in connection with or in accordance with the warranty thereof; that in fact there was no loss of power or of service while the same was being replaced as the electricians wired back to an-

other transformer so that the second transformer furnished electricity or carried the load of the transformer being replaced; that the evidence did not establish that the Plaintiff was responsible in any way for delays at Lewistown, Montana.

"That the evidence on the trial was too vague and uncertain to establish any damages that were caused at Lewistown by any defective transformers. The evidence was further insufficient to separate the alleged claims of damage at Lewistown for use of fuel oil from damages which may have been suffered at other places for alleged defective transformers. That it is impossible to separate the claims for telephone calls as to the alleged defective transformers at Lewistown from telephone calls relating to alleged wrong voltage transformers and alleged defective transformers at Havre, and that there was no showing of any responsibility on the part of the Plaintiff therefor so far as the same related to telephone calls with reference to defective transformers at Lewistown."

■ The granting of a motion for new trial rests in the sound discretion of the trial court and will not be disturbed on appeal unless it clearly appears that there has been an abuse of that discretion. Hylland v. Lawrenson, 73 S.D. 605, 47 N.W.2d 287; Museus v. Geyer, 75 S.D. 381, 66 N.W.2d 63. We have said that a clearer showing of an abuse of discretion is required when a new trial has been granted than where a new trial has been denied. Houck v. Hult, 60 S.D. 570; 245 N.W. 469. If one of several grounds in a motion for new trial is well founded, the granting of a new trial will be sustained.

■ Defendants contend that since the errors affect only the assessment of damages, the new trial should be limited to that issue. "A new trial" as defined by SDC 1960 Supp. 33.1604 "is a re-examination of an issue of fact in the same Court after a trial and decision by a jury, Court, or referee." Upon appeal from a judgment or order, the Supreme Court may reverse, affirm or modify same and "direct the entry of such judgment or

order as the Court deems required by the record." SDC 1960 Supp. 33.0730. This court when remanding a cause for new trial may limit a new trial to the issue affected by the error. See annotations 29 A.L.R.2d 1199 and 85 A.L.R.2d 61, § 15.

■ ■ As above stated, the only issues for determination by the jury were presented by the counterclaim. The issue of plaintiff's liability thus presented has been fairly and fully tried. There is no reason for resubmitting it to another jury. The determination of damages in the amount of $1,455.47 in answer to Special Interrogation (1) is separate and distinct and not erroneous and need not again be litigated. Evidence as to the assessment of the other damages is vague and uncertain and affected by error as found by the trial court.

The order appealed from is modified and the cause remanded for further proceedings upon the issue of damages in accordance with this opinion. No costs to be taxed.

RENTTO and HOMEYER, JJ., concur.

BIEGELMEIER, Judge (dissenting in part and concurring in part).

The jury found the damages:

(1)  Difference in cost, $1,455.47

(2)  Damages from wrong-voltage transformers, $13,544.53

(3)  Damages from defective transformers, $3,952.78

As I read the record, including that made on the motion for a new trial, the trial judge was of the opinion the new trial should be granted because of insufficiency of the evidence of damages resulting from the claimed defective transformers at Lewistown, based largely on the affidavits filed and depositions taken at that hearing.

The order reduced the judgment, not in the amount of Item (3)—$3952.78 which the jury found as damages for all defec-

tive transformers, but $8925.83. This left the damages at $9601.95 rather than the $15,000 the jury found as to Items (1) and (2).

Putting aside the differences between the judge's opinion and the statements in the order drawn by counsel it is difficult for me to follow the trial court's reasoning. There was no challenge to the jury's finding in Item (1) and on Item (2) the trial judge's September 6, 1962 opinion granting plaintiff's "motion for new trial" states "On the question of the sufficiency of the evidence to sustain a verdict for defendant on account of the wrong-voltage transformers, I have already ruled * * * my decision * * * will stand". If so, Items (1) and (2) should stand.

I am convinced the showing of newly discovered evidence affected the granting of a new trial on the insufficiency ground. As to the former plaintiff's counsel did not show legal diligence or surprise. That damages either at different projects or from the wrong-voltage transformers and defective transformers were not separated in the evidence or by other methods was a choice available to, but not used by, them at the trial.

The new trial order gave defendant an option of accepting a reduction of $10,319.58 rather than a correct reduction of $3,-952.78 the defective transformer damage item. I would now grant defendant this option of consenting to a reduction of the judgment in the latter amount; failing to do so an order granting a new trial as modified by the court's opinion would be entered. Because a majority conclude otherwise on this feature, I am compelled to dissent. In view of this result and the first protracted trial, the opinion now wisely limits the new trial to the issues specifically noted and I concur in that remand. A recent Iowa opinion, Feldhahn v. Van Deventer, 253 Iowa 1194, 115 N.W.2d 862, so concluded. It is a disposition trial courts may use judiciously.

HANSON, J., concurs with BIEGELMEIER, J., opinion.